NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

ANGELICA PITTMAN, *Appellant,*

*v.*

ARIZONA DEPARTMENT OF ECONOMIC SECURITY, an agency,
*Appellee.*

No. 1 CA-UB 21-0275
FILED 11-16-2023

Appeal from the A.D.E.S. Appeals Board
No.  U-1708180-001-B

**REVERSED AND REMANDED**

COUNSEL

Bryan Cave Leighton Paisner LLP, Phoenix
By Gregory B. Iannelli
*Counsel for Appellant*

Arizona Attorney General's Office, Tucson
By Jennifer R. Blum
*Counsel for Appellee*

Community Legal Services, Phoenix
By Pamela M. Bridge
*Co-counsel for Amicus Curiae*

DNA People's Legal Services Inc., Flagstaff
By Charles W. Doughty
*Co-counsel for Amicus Curiae*

Southern Arizona Legal Aid, Tucson
By Anthony L. Young
*Co-counsel for Amicus Curiae*

William E. Morris Institute for Justice, Phoenix
By Andrew P. Schaffer, Branda Munoz Furnish
*Co-counsel for Amicus Curiae*

---

**MEMORANDUM DECISION**

Vice Chief Judge Randall M. Howe delivered the decision of the court, in which Judge Anni Hill Foster joined and Judge Kent E. Cattani specially concurred.

---

**H O W E**, Judge:

¶1          Angelica Pittman appeals the decision of the Appeals Board of the Arizona Department of Economic Security finding her ineligible for pandemic unemployment assistance ("PUA") benefits under the Coronavirus Aid, Relief, and Economic Security ("CARES") Act of 2020, 15 U.S.C. §§ 9001 to 9141. Because the Appeals Board erred in finding Pittman ineligible for PUA benefits, we vacate and remand.

**FACTS AND PROCEDURAL HISTORY**

¶2          Pittman lives with her teenage daughter. Before the COVID-19 pandemic, Pittman did not hold a traditional job but performed gig work, including babysitting, selling artwork, sewing costumes, repairing computers, working as a field agent for a consumer company, recycling scrap metal, and doing yardwork for others. She never made enough money to pay taxes. Pittman stopped working in March 2020 once the pandemic hit because her daughter had to attend school virtually, and Pittman was concerned about her daughter's safety. She also lost demand for her services.

¶3          In July 2020, Pittman filed an initial claim for PUA benefits. On the application, she certified that she was self-employed as a gig worker, currently unemployed as a direct result of the pandemic, but was able and

available to accept work. She certified that her daughter's school was closed because of the pandemic, and that she had primary caregiving responsibility for her daughter. She also certified that she worked full-time and that her quarterly net earnings in 2019 were less than $200. On December 14, 2020, the Department disqualified her from receiving PUA benefits because it had determined that she had provided insufficient proof of wages under the CARES Act. Pittman timely appealed.

¶4            The Administrative Law Judge ("ALJ") held a hearing, during which Pittman testified that she normally made a living doing gig work. A "gig worker" is "a person who works temporary jobs typically in the service sector as an independent contractor or freelancer." *Gig worker*, Merriam-Webster.com Dictionary, https://www.merriam-webster.com/dictionary/gig%20worker (last visited Oct. 25, 2023). She testified that before the pandemic, she worked Monday through Friday; she would drop off her daughter at the school bus and then walk around "scrapping" for metal in alleyways from 7:30 a.m. to 4:00 p.m. to sell. She was paid per pound of metal, which ranged from $13 to $60. She added that she was hired to fix computers, a job that did not continue once the pandemic hit; she would normally receive between $60 and $150 depending on the type of work done on the computer. She added that at the time of the hearing she had recently sold artwork after advertising online. She had also sold baby clothes and collectible cards online. For all of this work, Pittman only earned about $600 for the entire year of 2019.

¶5            During the pandemic, Pittman's daughter's school began virtual learning. Pittman testified that she could not go scrapping because she did not want to leave her 12-year-old daughter unsupervised. Pittman stayed home with her daughter because the apartment in general was unsafe; several people had been killed, shot, or stabbed there. Pittman added that her other daughter had been kidnapped, drugged, and raped when she was 16 years old. Her only other source of sustenance was food stamps.

¶6            The ALJ affirmed the Department's determination because Pittman did not establish that she was "attached to the labor force" or provide proof that she worked "other than odd jobs for a few hours weekly." The ALJ cited the CARES Act, the Department of Labor's *Unemployment Insurance Program Letters* ("UIPL") *No. 16-20* (2020), *No. 16-20 Change 1* (2020), and *No. 16-20 Change 2* (2020), along with an internal Department policy that implemented the CARES Act ("Exclusion"). The Exclusion provides, "Odd jobs, such as babysitting or

doing neighborhood yard work for a few hours weekly, do not constitute a recent attachment to the labor market."

¶7            Pittman timely appealed. The Appeals Board affirmed, finding that Pittman's gig work were "odd jobs" that did not show that she was self-employed. Pittman timely requested judicial review by this court, arguing that she was not required to present any evidence before the amendment of the CARES Act on December 27, 2020, and that even if she was required to present evidence to substantiate her claim, she met her burden. This court granted her application under A.R.S. § 41–1993, appointed her pro bono counsel, and requested briefing on specific issues.

## DISCUSSION

¶8            In her supplemental opening brief, Pittman presents several arguments that the Appeals Board abused its discretion in denying her claim for PUA benefits as a self-employed[1] gig worker. She argues first that the CARES Act, a federal law, preempts the application of the Exclusion, a state law, under the Supremacy Clause of the United States Constitution. U.S. Const. art. VI, cl. 2. She also argues that the Exclusion is void because it was not a properly promulgated rule under the Administrative Procedure Act and that the Appeals Board violated her due process rights in relying on the Exclusion. We need not reach these arguments, however, because the Appeals Board erred in finding that she must first prove she was self-employed rather than demonstrating that she met the definition of "covered individual."

¶9            In reviewing the Appeals Board's ruling, we accept its factual findings unless they are arbitrary, capricious, or an abuse of discretion. *Avila v. Ariz. Dep't of Econ. Sec.*, 160 Ariz. 246, 248 (App. 1989). An "agency abuses its discretion when it misapplies the law or fails to consider the relevant facts." *Simmons v. Ariz. Dep't of Econ. Sec.*, 254 Ariz. 109, 111 ¶ 10 (App. 2022) (quoting *Rios Moreno v. Ariz. Dep't of Econ. Sec.*, 178 Ariz. 365, 367 (App. 1994)). We review de novo whether the Board properly applied the law. *Bowman v. Ariz. Dep't of Econ. Sec.*, 182 Ariz. 543, 545 (App. 1995).

---

[1]            The U.S. Department of Labor has defined "self-employed individual" as "an individual whose primary reliance for income is on the performance of services in the individual's own business, or on the individual's own farm." *See* 20 C.F.R. § 625.2(n). This definition includes independent contractors, gig economy workers, and workers for certain religious entities. *See* U.S. Dep't of Labor, *UIPL No. 16–20* I–3 (2020).

"We may substitute our judgment for the agency's conclusions about the legal effect of facts." *Simmons*, 254 Ariz. at 111 ¶ 10.

¶10            In July 2020, an individual was eligible to receive PUA benefits under the plain language of the CARES Act if that individual was a "covered individual" which was defined as someone who met two conditions. First, the individual must be otherwise ineligible for "regular compensation or extended benefits under State or Federal law or pandemic emergency unemployment compensation." 15 U.S.C. § 9021(a)(3)(A)(i). An individual who fulfills this first condition includes one "who is []seeking part-time employment, lacking sufficient work history, *or* who is otherwise not qualified" for unemployment compensation, employment benefits, or pandemic emergency unemployment compensation. U.S. Dep't of Labor, *UIPL Change 4* I-4 (2021). Pittman did not work a traditional job, and thus cannot be considered a traditional employee. *See* A.R.S. § 23–771(6) (an individual is ineligible for unemployment benefits unless she has earned wages for "insured work"); A.R.S. § 23–619 (defining "insured work" as confined to employment); A.R.S. § 23–615(A) (defining "employment" as "any service of whatever nature performed by an employee"); A.R.S. § 23–613.01 (an "employee" is not an independent worker). Pittman demonstrated that she was not qualified for unemployment compensation and therefore met the first prong of the definition of "covered individual."

¶11            Second, as required before December 26, 2020, the individual must self-certify that she "is otherwise able to work and available for work within the meaning of applicable State law, except the individual is unemployed, partially unemployed, or unable or unavailable to work" because of a listed reason related to COVID-19. 15 U.S.C. § 9021(a)(3)(A)(ii)(I)(aa)–(kk). One such reason is because the individual has primary caregiving responsibility over a family member who is unable to attend school because it is closed as a direct result of the COVID-19 pandemic. 15 U.S.C. § 9021(a)(3)(A)(ii)(I)(dd).

¶12            Pittman also satisfied this condition. She certified that she was able to and available for work under Arizona law, except that her daughter's school was closed as a direct result of the COVID-19 pandemic. "A claimant's certification that [she] is available for work is accepted as prima facie evidence of availability in the absence of evidence to the contrary." A.A.C. R6–3–52190(B)(8). Pittman relied on her daughter's in-person school attendance to allow her to work. 15 U.S.C. § 9021(a)(3)(A)(ii)(I)(dd). She provided evidence that her daughter's school switched to remote learning, testified that she had to stay home with her daughter because of the crime in their neighborhood, and provided

evidence of that crime. The ALJ did not expressly find her testimony about the safety of her neighborhood not credible. Pittman thus satisfied the second condition.

¶13    In sum, Pittman presented evidence that she met the requirements outlined in the plain language of the CARES Act. The Department did not present contradictory evidence, and the ALJ did not find that Pittman's testimony lacked credibility. Pittman qualified as a covered individual under the CARES Act, and she was eligible to receive PUA benefits.

**CONCLUSION**

¶14    We reverse and remand for a determination of the award.

C A T T A N I, Judge, specially concurring:

¶15    I agree that the Board erred by denying Pittman PUA benefits to which she was entitled. I write separately to highlight that PUA benefits were designed precisely for individuals—including gig workers and other self-employed individuals like Pittman—who would not otherwise qualify for traditional unemployment benefits. 15 U.S.C. § 9021(a)(3)(A)(ii)(I), (II); *see also* UIPL No. 16-20, Attachment I, I-10 (Apr. 5, 2020) (including gig workers as self-employed). As the decision notes, Pittman self-certified that she was "self-employed . . . or a gig worker." But more than that, the *only* evidence of record established that, before the pandemic, Pittman worked in one way or another essentially full-time at a variety of gigs to earn the modest amount she needed to make ends meet. ADES did not present controverting evidence or otherwise contest Pittman's account of full-time work, and the Tribunal made no finding that Pittman was not credible. *See Simmons v. Ariz. Dep't of Econ. Sec.*, 254 Ariz. 109, 113, ¶¶ 20–21 (App. 2022) (holding that, absent controverting evidence or an adverse credibility determination, claimant's testimony was sufficient to establish eligibility for PUA benefits).

¶16    Although Pittman's pre-pandemic gig work generated only limited income, the CARES Act extended PUA benefits to gig workers (among others) without reference to wage-threshold requirements. *See* UIPL No. 16-20, Change 1, Attachment I, I-11 (Apr. 27, 2020) (describing the relevant consideration as not a fixed floor for qualifying earnings, but rather whether the self-employed individual (or gig worker, or independent contractor, etc.) suffered a "significant diminution" from pre-pandemic work); UIPL No. 16-20, Change 2, Attachment I, I-4 to -5 (July 21, 2020) (same); *see also* UIPL No. 16-20, Change 4, Attachment I, I-8 (Jan. 8, 2021)

(same).  Benefits under the CARES Act are paid by the federal government (although processed by the States), and the eligibility requirements are those specified by the federal government.  Here, based on the uncontroverted evidence, Pittman met those requirements, and she is entitled to PUA benefits.



AMY M. WOOD • Clerk of the Court
FILED:    AA